**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MELVIN L. HOBSON                                              Case No. 04-74631

        Plaintiff,                                      DISTRICT JUDGE
                                                              ARTHUR J. TARNOW
v.
                                                              MAGISTRATE JUDGE
COMMISSIONER OF                                               DONALD A. SCHEER
SOCIAL SECURITY,

        Defendant.

_____/

**ORDER SUSTAINING PLAINTIFF'S OBJECTIONS TO REPORT AND
RECOMMENDATION [DE 19], REJECTING REPORT AND RECOMMENDATION
[DE 18], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DE 12],
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE 15]AND
REMANDING CASE FOR FURTHER PROCEEDINGS BEFORE DIFFERENT
ADMINISTRATIVE LAW JUDGE**

## I.  INTRODUCTION

This case is before the Court on appeal from the Social Security Administration, which denied Plaintiff's claim for disability benefits.  The administrative law judge (ALJ) found that Plaintiff suffers from two severe impairments, degenerative disc disease of the lumbar spine and hypertension.  However, the ALJ denied Plaintiff's claim based on a finding that he could perform light work.  The issue presented in this appeal is whether or not that finding is supported by substantial evidence.

The parties filed cross-motions for summary judgment, which the Court referred to the Magistrate Judge.  The Magistrate Judge filed a report and recommendation recommending that the denial of benefits be affirmed.  Plaintiff filed objections to the R&R.  For the reasons that follow, the report and recommendation is rejected and the case is remanded for further proceedings before a different administrative law judge.

Hobson v. Commissioner of Social Security<br>Case No. 04-74631

## II.  FACTS

Plaintiff Melvin L. Hobson is a fifty-two year old man with a high school equivalency degree.  From 1978 through 1994, Plaintiff was employed as a pipe repairman for the City of Detroit Water and Sewer Department.  After being laid off by the city, Plaintiff worked as a heavy equipment mover and forklift operator. Plaintiff's work required a lot of walking and standing.  He had to constantly bend down and reach over his head.  He was required to lift more than 75 pounds on a regular basis.  Plaintiff stopped working in September 1997 after injuring his back at work.

Plaintiff has undergone four spinal surgeries:  a removal of bone fragments in 1998; a fusion of the lumbar spine at L5-S1 in 1998; a "redo" of the lumbar laminectomy with removal of scar tissue in 1999; and a C6 vertebrectomy on August 22, 2002.

Plaintiff filed an application for Supplemental Security Income (SSI) benefits on October 31, 2001.  The agency denied his claim.  Plaintiff requested a *de novo* hearing, which was held on November 6, 2003 before Administrative Law Judge Manuel J. Cardé.

Following the *de novo* hearing, on November 17, 2003, the ALJ sent a letter to Plaintiff's counsel informing him of his "plan of action" concerning Plaintiff's application.  First, the ALJ concluded that the medical expert who testified at the hearing testified was board certified in internal medicine and had testified outside his area of expertise by addressing the orthopedic aspects of Plaintiff's file.  Therefore, the ALJ planned to give the file to one of the agency's orthopedic doctors for evaluation.

Second, the ALJ planned to send a supplemental interrogatory to Plaintiff's treating physician, Dr. Alma George, in which he would "mainly be asking about her conclusions reached in the residual functional capacity of September 13, 2002." Tr. 181.

Third, the ALJ "believe[d] it necessary to submit [Plaintiff] to a consultative exam in

2

Hobson v. Commissioner of Social Security
Case No. 04-74631

order to determine his present residual functional capacity." *Id*.

Fourth, the ALJ felt "[i]t would be very helpful [to] get a print-out of the pharmacy records regarding the purchase of Vicodin [to] corroborate [Plaintiff's] testimony about the usage of this medicine." *Id*.

Fifth, upon receiving all of the requested evidence, the ALJ planned to send an interrogatory to a vocational expert to determine Plaintiff's capacity to perform any of his past relevant work or any other work that might exist in the national economy.

After receiving the consultative exam and Dr. George's medical records, the ALJ submitted Plaintiff's file to an orthopedist, Dr. R.A. Hutson, for evaluation. Dr. Hutson reviewed Plaintiff's file and issued a 1 ½ page handwritten report. Dr. Hutson's report consists of a list of the documents in the record, followed by conclusion with no supporting evidence or analysis. Dr. Hutson concluded:

> This patient has a (?) disorder in his lumbar spine–he does not meet or equal in severity any listed impairment in my opinion. Based upon the evidence of record this man could do light work by definition of the social security administration.

Tr. 283-84.

Approximately two months after receiving Dr. Hutson's report, the ALJ issued his decision denying Plaintiff's claim for benefits. The ALJ found that Plaintiff suffered from three severe impairments–degenerative disc disease, the residual effects of injury and lumbar surgery, and hypertension. However, the ALJ decided that Plaintiff retained the residual functional capacity to perform light work.

### III.  STANDARD OF REVIEW

"When reviewing the Commissioner's finding that a claimant is not disabled within the meaning of the Social Security Act, [the Court considers] only whether the decision is supported by substantial evidence and whether the ALJ employed the proper legal standards." *Martin v.*

*Comm'r of Soc. Sec.*, 2006 U.S. App. LEXIS 5461, 4-5 (6th Cir. 2006) (unpublished) (quoting *Schuler v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 97, 99 (6th Cir. 2004)); 42 U.S.C. § 405 (g) (2004). "The standard for substantial evidence requires 'more than a scintilla of evidence but less than a preponderance.'" *Id*. (quoting *Brainard v. Sec'y of Health & Human Servs*., 889 F.2d 679, 681 (6th Cir. 1989)). "All that is required to uphold the Commissioner's findings is that the record contain evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).  "The court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Id.* (citing *Schuler*, 109 Fed. Appx. at 99).

## IV.  DISCUSSION

### A.  The ALJ's Decision Is Not Supported By Substantial Evidence

Under 20 C.F.R. § 404.1520(d), the Commissioner is required to use a five-step sequential analysis in evaluating claims for disability insurance benefits.  The Commissioner must determine:

(1)   Whether the claimant is engaged in any substantial gainful activity;

(2)   Whether the claimant suffers from a severe impairment;

(3)   Whether the severe impairment meets or equals a listed impairment;

(4)   Whether the claimant is capable of performing past relevant work; and

(5)   Whether the claimant possesses any residual functional capacity to perform any substantial gainful activity found in significant numbers in the national economy.

20 C.F.R. 404.152(B)-(F) (1997).

Plaintiff established that he was not engaged in any substantial gainful activity and that he suffers from the severe impairments of degenerative disc disease and hypertension. Therefore, the burden of proof shifted to Defendant to demonstrate that Plaintiff could perform

light work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The ALJ found that Plaintiff could perform light work. The narrow question presented in this appeal is whether or not that finding was supported by substantial evidence.

20 C.F.R. § 404.1567(b) defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

According to his decision denying benefits (Tr. 14-15), the ALJ relied on the following evidence in support his conclusion that Plaintiff could still perform light work:

- The assessment of the state agency dated 12/28/01; Tr. 139-46;

- Dr. Hutson's conclusions after reviewing the file; Tr. 283-84;

- The objective medical evidence of record; NO CITATION;

- The credibility of Plaintiff's subjective complaints and allegations "concerning the severity of his impairments [which were] not reasonably consistent with the objective medical and other evidence of record." Tr. 15.

### 1. Assessment of State Agency

According to the assessment of the state agency dated 12/28/01, Plaintiff retained the residual functional capacity to occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for a total of about 6 hours a day in an 8-hour workday, sit for a total of about 6 hours a day in an 8-hour workday, and perform unlimited pushing and/or pulling. The signature

Hobson v. Commissioner of Social Security
Case No. 04-74631

at the end of the form is illegible, and there is no evidence in the record indicating who completed it. If this form were given full weight, it would support the ALJ's finding that Plaintiff could perform light work.

The report of the state agency relied upon by the ALJ pre-dated Plaintiff's fourth back surgery by approximately eight months. As discussed below, the ALJ rejected a similar report completed by Plaintiff's treating physician based on the fact that it was completed less than one month *after* Plaintiff's fourth back surgery. While the ALJ was free to evaluate the timing of the reports in determining their weight, it is apparent that he aimed a critical eye only at the report of Plaintiff's treating physician, and did not do so with respect to the anonymous report completed eight months prior to surgery. This analytical disparity was unwarranted, and reveals a lack of consistent reasoning by the ALJ. Under the circumstances, the report of the state agency dated 12/28/01 is entitled to little or no weight in the determination of whether or not Plaintiff could perform light work.

**2. Dr. Hutson's Report**

As noted, Dr. Hutson's report consists of a list describing the items in the file followed by a paragraph stating in conclusive but empty terms that Plaintiff could still perform light work. Dr. Hutson's report lacks any credible substantive basis upon which the ALJ could have found that Plaintiff could perform light work. Therefore, it does not support the ALJ's finding.

The ALJ's treatment of Dr. Hutson's report was also unreasonable to the extent that it differed from the ALJ's analysis of the reports from Plaintiff's treating physician, Dr. George. Tr. 131-33. Less than one month after Plaintiff's final back surgery, on September 13, 2002, Dr. George completed a residual functional capacities form restricting Plaintiff to lifting less than 10 pounds, standing less than 2 hours in an 8-hour workday, sitting less than about 6 hours in an 8-hour weekday with alternate sitting and standing to relieve pain, and limited pushing and pulling.

Hobson v. Commissioner of Social Security<br>Case No. 04-74631

At the *de novo* hearing, the vocational expert testified that given the restrictions imposed by Dr. George in this form, Plaintiff could not perform any type of sustained full-time work activity. Tr. 361.

The ALJ rejected Dr. George's findings on the grounds that they were not supported by any objective medical findings. However, a portion of the form completed by Dr. George asked "What medical/clinical finding(s) support your conclusions in items 1-4 above?" Tr. 132. Under this heading, Dr. George wrote:

- Immediate post op cervical laminectomy;
- Presently in neck brace;
- Spinal stability;
- Previous back surgery lumbar laminectomy.

Tr. 132.

Another heading asked Dr. George to "[d]escribe how the activities checked 'limited' are impaired. What medical/clinical findings support your conclusions?" Tr. 133. Dr. George wrote:

"[Patient] presently on heavy doses of pain meds which prevents him from participating in any activities." *Id.*[1]

Where the form asked for medical and clinical findings in support of Plaintiff's restrictions, Dr. George described such findings. The ALJ concluded that Dr. George's report was issued too soon after Plaintiff's final surgery, and that "such significant restrictions and limitations are not warranted based upon the minimal musculoskeletal and neurological deficits

---

[1] It is undisputed that Plaintiff's back surgeon, Dr. King, was still prescribing pain medication up to the time of the administrative hearing. Tr. 286. Therefore, the conclusion that Plaintiff was fully recovered from all disabling aspects of his injury, surgery, and treatment is unfounded.

Hobson v. Commissioner of Social Security
Case No. 04-74631

of record." Tr. 16. Therefore, the ALJ concluded that he was "unable to give [the report] controlling weight." *Id*.

The Magistrate Judge concluded that Dr. George's report was not entitled to deference or special weight because "Dr. George offered little objective evidence to support her disability opinion." R&R at 7. Despite the findings set forth above, the Magistrate Judge criticized Dr. George's report for a lack of diagnostic support. In a footnote, the Magistrate Judge stated:

> The doctor simply circled or checked off pre-printed answers on the 'questionnaire' sent her by the SSA. These answers provided little, if any, insight into Plaintiff's condition during the relevant period, as contemplated by the treating physician regulations. 20 C.F.R. § 404.1527(d)(2)(2005). Moreover, the report was prepared just a month after claimant's most recent back surgery in August 2002, when he was still wearing a temporary neck brace.

R&R at 7-8 n. 7.

Contrary to the ALJ and Magistrate Judge's conclusions, Dr. George's opinions were supported by objective diagnostic findings, which Dr. George set forth in the spaces provided on the form. The Court finds it unreasonable for the Commission to supply a treating physician with a particular form for evaluating a claimant's condition, only to reject the physician's findings because they are stated in the manner requested by the form. Dr. George's report, which supports a finding that Plaintiff is unable to work, should have been given greater weight.

More importantly, Dr. Hutson's report is far more deficient than Dr. George's report in terms of a lack of "objective evidence." Unlike Dr. George, Dr. Hutson never examined Plaintiff. During the *de novo* hearing, the ALJ criticized Dr. George's report because he doubted whether or not Dr. George actually examined Plaintiff. Plaintiff's counsel argued that because Dr. George was a treating physician, Plaintiff's presence at the time Dr. George filled out the form did not necessarily detract from the report's credibility. The ALJ responded: "I don't know. If the claimant wasn't present then I want to find out where he got his conclusions from."

8

Tr. 360. The record indicates that the ALJ was not similarly concerned with finding out where Dr. Hutson "got his conclusions from."

Unlike Dr. George, Dr. Hutson offered no objective evidence or diagnostic findings in support of his assertion that Plaintiff could perform light work. Nevertheless, rather than discounting or rejecting Dr. Hutson's conclusion for a lack of objective diagnostic findings, the ALJ and Magistrate Judge accepted Dr. Hutson's opinion without further analysis. Dr. Hutson's use of the magic words "Plaintiff could perform light work" was insufficient to be considered in support the ALJ's denial of benefits.

By relying on Dr. Hutson's report rather than Dr. George's report, the ALJ either: (1) fundamentally changed his opinion that a patient should be present when a doctor prepares a report as to functional capacity; or (2) applied completely different standards to Dr. George and Dr. Hutson. In either case, the inconsistency in his approach undermines his decision and warrants reversal.

### 3. Objective Medical Evidence In the Record

The ALJ asserted, without citation to any record evidence, that his findings as to light work were "consistent with the objective medical evidence of record." Tr. 15. The Court finds that there is less than a scintilla of evidence in the record to support such a finding.

Plaintiff underwent four surgical procedures prior to the *de novo* hearing: a removal of bone fragments in 1998; a fusion of the lumbar spine at L5-S1 in 1998; a "redo" of the lumbar laminectomy with removal of scar tissue in 1999; and a C6 vertebrectomy on August 22, 2002, following a diagnosis of cervical spondylosis at the C6-C7 level, with a C6 sensory deficit. This history is strong objective medical evidence that Plaintiff's complaints of disabling back pain were credible, and that he could not engage in light work as defined by 20 C.F.R. § 404.1567.

The ALJ found that follow-up reports issued by Plaintiff's surgeon, Dr. King, proved that

his back injuries were "resolved with surgery in August 2002. Otherwise, there have been no significant or persistent musculoskeletal or neurological deficits." Tr. 15.

Contrary to the ALJ's findings, the medical evidence in the record shows objective indications of "musculoskeletal and neurological deficits" supporting Plaintiff's inability to work. An MRI on May 15, 2003 revealed the following:

- Scar tissue enveloping the left lateral aspect of the thecal sac and encroaching upon the left L5-S1 neural foramen causing narrowing and compression effect on the existing left L5 nerve root;

- Grade I anteolisthesis of L5 over S1 levels with gross end-plate degenerative changes at these levels.

- At L4-L5 level, there is mild diffuse disc bulge indenting the thecal sac causing narrowing of the inferior aspect of bilateral neural foramina;

- At L5-S1 level, there is a superimposed disc bulge indenting the thecal sac and causing narrowing of the neural foramina.

Tr. 200.

In light of the foregoing MRI report, the ALJ's conclusion that "[t]here is no evidence of the nerve root or spinal cord compromise required by listing 1.04" is unreasonable, and demonstrates that the ALJ ignored objective evidence in the record showing that Plaintiff's injuries disable him from doing light work.

On August 22, 2003, Dr. King noted that Plaintiff was "doing quite well," and that "[h]e does have neck pain and interscapular pain, but nothing similar to what he had before." Tr. 286. Dr. King reported that Plaintiff's neck was "supple with full range of motion." *Id*. However, relevant to the ALJ's finding of residual functional capacity, Dr. King recommended that Plaintiff "[c]ontinue overall level of functioning." *Id*. At the time of the examination, Plaintiff could not work and was not working due to his impairments. In addition to his recommendation that Plaintiff maintain a minimum level of functioning, Dr. King renewed prescriptions for

10

Hobson v. Commissioner of Social Security
Case No. 04-74631

Tegretol and Vicodin.

Dr. King also prescribed physical therapy and rehabilitation. However, Plaintiff's insurance company would not pay for rehabilitation, so he could not receive the prescribed treatment. Tr. 354.

The ALJ reviewed Dr. King's reports for isolated clinical findings concerning Plaintiff's progress post-surgery, and then translated those isolated findings to a residual functional capacity for light work without further analysis.

Rather than translating Plaintiff's clinical findings into a finding of residual functional capacity *via* a vocational or other expert, the ALJ merely took "administrative notice of the existence of a significant number of unskilled jobs in the national economy, when the criteria of a particular Medical-Vocational Rule have been satisfied." Tr. 17. In this case, where no one has analyzed Plaintiff's realistic functional capacity through the lens of the medical evidence, such reliance on § 200.00(b) of Appendix 2, Subpart P, Regulations No. 4[2] was improper.

Four months after Dr. King's last report, on December 23, 2003, consulting internist and physiatrist Dr. Syed Iqbal issued a report on referral from the Michigan Disability Determination

---

[2]The provision relied upon by the ALJ provides:
(b) The existence of jobs in the national economy is reflected in the "Decisions" shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy) as supported by the "Dictionary of Occupational Titles" and the "Occupational Outlook Handbook," published by the Department of Labor; the "County Business Patterns" and "Census Surveys" published by the Bureau of the Census; and occupational surveys of light and sedentary jobs prepared for the Social Security Administration by various State employment agencies. Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established. However, the existence of such jobs for individuals whose remaining functional capacity or other factors do not coincide with the criteria of a rule must be further considered in terms of what kinds of jobs or types of work may be either additionally indicated or precluded.

11

Service (MDDS). Tr. 194-211.  Dr. Iqbal noted that Plaintiff had normal range of motion in all joints and normal muscle strength in his extremities.  Range of motion for the cervical spine and lumbar spine were "mildly limited."  Plaintiff had "full reaching, pushing, and pulling capacity [and his] fine finger movements and the gross grasp were in normal limits.  Dr. Iqbal concluded that Plaintiff could return to work with restrictions, specifically, that he could lift 10 pounds occasionally, and could lift less than 10 pounds frequently.  Plaintiff could walk without a cane for short distances, but Dr. Iqbal recommended an ambulatory aid for long distances.  Dr. Iqbal noted that Plaintiff "appeared quite agile."  However, he also indicated that Plaintiff "could not recover from the squatting position, could not walk on his toes or his heels, and that Plaintiff "exhibited "signs of tenderness in his back while twisting and turning."  Dr. Iqbal assessed Plaintiff with "marked osteoarthritis of the lower lumbar spine" and noted "evidence of post operative changes of laminectomy at L4-S1 level."  He concluded:

> On clinical examination, the cause for the low back pain was found to be moderate to severe osteoarthritic changes that were noted on both clinical and x-ray examinations.  There was evidence of surgical procedures done in the past.  Central nervous system examination did reveal residual signs of S1 radiculopathy with the loss of reflexes, but there was no atrophy of the muscles.  The compensatory hypertrophy might have taken place after the surgical procedure.  The claimant could initiate, sustain, and complee the act of walking, but the walking pattern were type of antalgic gait.  In his case, the necessity of the cane for long distance appears to be essential to prevent the pain in his lower back, as well as, to slow the process of osteoarthritis.

Tr. 201.

Dr. Iqbal's report contains the type of "objective" evidence and diagnostic findings that the ALJ and Magistrate Judge believed were missing from the record.  However, the ALJ specifically rejected Dr. Iqbal's report.  In his decision, the ALJ stated as follows:

> [S]uch significant restrictions and limitations [found by Dr. Iqbal] are not warranted based upon the minimal musculoskeletal and neurological deficits of record.  Therefore, while giving the opinion of Dr. Iqbal appropriate consideration, I am unable to give it any significant weight.

Tr. 17.

Similar to his treatment of Dr. George's report, the ALJ concluded that Dr. Iqbal's conclusions were "not warranted based on the minimal muculoskeletal and neuroligical deficits of record." As he did with Dr. George's report, the ALJ did not support this conclusory phrase with a citation to any record evidence.

The Magistrate Judge cited Dr. Iqbal's report in support of the conclusion that Plaintiff could perform to substantial gainful activity given his restrictions. However, the Magistrate Judge did not comment on the fact that the ALJ specifically rejected Dr. Iqbal's report.

The Court finds that Dr. Iqbal's report supported a finding that Plaintiff could not perform light work. Therefore, Dr. Iqbal's report further undermines the Magistrate Judge's conclusion that the decision of the ALJ was supported by substantial evidence.

### 4. Plaintiff's Credibility

As to Plaintiff's credibility, the ALJ stated as follows:

> Finally, in determining the claimant's residual functional capacity, I have carefully considered the credibility of his subjective complaints as required by the regulations and the rulings (20 C.F.R. § 416.929(c)(3) and Social Security Ruling 96-7p). The claimant's subjective complaints and allegations concerning the severity of his impairments are not reasonably consistent with the objective medical and other evidence of record.

Tr. 15.

As noted, the ALJ either completely ignored or applied unsound reasoning to the objective evidence in the record, which established a strong basis for Plaintiff's subjective complaints. Therefore, the ALJ's conclusive statement as to credibility, which does not cite either the hearing transcript or any record evidence, is insufficient to support the decision denying benefits. *Feliskey v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

Hobson v. Commissioner of Social Security<br>
Case No. 04-74631

### B.  The Behavior of the Administrative Law Judge Warrants Reversal

In support of his motion for summary judgment, Plaintiff argued that the ALJ deprived Plaintiff of a fair hearing and fair analysis of his application for benefits. The Magistrate Judge did not address this argument in the R&R.

The Court has reviewed the transcript of the *de novo* hearing.  Based on this review, the Court finds that the ALJ conducted the *de novo* hearing with a general lack of decorum and respect for Plaintiff and his counsel.

The Court recognizes that there is a presumption that administrative adjudicators are unbiased, and that honesty and integrity exist among them. *Wells v. Apfel*, 2000 U.S. App. LEXIS 26163, 14-17 (6th Cir. 2000) (unpublished) (citing *Schweiker v. McClure*, 456 U.S. 188, 195-96, 72 L. Ed. 2d 1, 102 S. Ct. 1665 (1982)). "[T]he burden of establishing a disqualifying interest rests on the party making the assertion." *Id*. (citing *McClure*, 456 U.S. at 196).

Although the Court cannot conclude that the ALJ was biased against Plaintiff, the record evidence reveals a clear lack of decorum and respectful conduct at the administrative hearing. While not rising to the level necessary to show partiality, the ALJ's conduct interfered with the witnesses, and failed to afford Plaintiff and his counsel the minimum dignity and respect to which they were entitled.  The Court feels that the hearing transcript speaks for itself in this regard.  However, a few examples are particularly noteworthy.

First, at the outset of the hearing the ALJ took Plaintiff's bottle of Vicodin away, counted the pills inside, and accused Plaintiff of consuming 27 pills in two days.  After Plaintiff explained that he left half the pills at his girlfriend's house, and therefore had only consumed four pills, the ALJ abandoned this line of questioning. Tr. at 325-29.  However, the ALJ's attitude toward the Plaintiff throughout the remainder of the hearing was consistent with this inquisitorial tone.

Hobson v. Commissioner of Social Security
Case No. 04-74631

Second, the ALJ attempted to elicit testimony from the vocational expert as to residual functional capacity.  However, before the VE could answer, the ALJ interrupted him and would not accept further explanation.  Tr. 345-347.

Third, after the Plaintiff offered a sincere explanation of his daily symptoms, the ALJ asked if he could ask him "one personal question[.]" Tr. 391.  The ALJ proceeded to accuse Plaintiff of "blowing" his workers compensation settlement ($35,000) in a year.  Tr. 392.  When Plaintiff expressed his feeling that the ALJ was being unfair, the ALJ accused him of coming to the hearing with a "fighting attitude" and blamed Plaintiff for getting them both "worked up." Tr. 396-98.  Having reviewed the entire transcript, the Court finds that the ALJ improperly instigated whatever fighting attitude emerged in the *de novo* hearing.

The medical evidence of record is sufficient to warrant reversal and remand.  However, the Court is convinced that ALJ's behavior at the *de novo* hearing demonstrates that on remand, Plaintiff's claim should be reviewed by a different administrative law judge.

Hobson v. Commissioner of Social Security<br>Case No. 04-74631

### V.  CONCLUSION

Based on the foregoing, it is HEREBY ORDERED AS FOLLOWS:

1. Plaintiff's objections to the report and recommendation are SUSTAINED;

2. The Report and Recommendation is REJECTED;

3. Plaintiff's motion for summary judgment is DENIED;

4. Defendant's motion for summary judgment is DENIED;

5. This matter is remanded to the Social Security Administration for further proceedings before a different administrative law judge.

SO ORDERED.

        s/Arthur J. Tarnow  
        Arthur J. Tarnow  
        United States District Judge

Dated:  March 31, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2006, by electronic and/or ordinary mail.

        s/Theresa E. Taylor  
        Case Manager